WILLIAM B. ALLEN, PLAINTIFF, v. NANCY PULLAM, APPELLANT, CHARLES M. MERRIWEATHER, RESPONDENT.*

In the Springfield Court of Appeals. Opinion filed May 24, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 584, p. 694, n. 52; Landlord and Tenant 36CJ, section 1206, p. 364, n. 54; section 1208, p. 366, n. 64; section 1274, p. 387, n. 97; Mortgages, 41CJ, section 3, p. 276, n. 14; section 604, p. 627, n. 26; section 1455, p. 999, n. 79, 80.

*Von Mayes* and *J. E. Duncan* for appellant.

*Ward & Reeves* for respondent.

BAILEY, J.—Plaintiff filed a bill of interpleader against defendants, setting forth that in October, 1925, by a contract in writing, he rented from one T. N. McLemore certain real estate in Pemiscot county for the year 1926, and gave to the said McLemore his promissory note for the rental sum of $1800, payable November 1, 1926; that on the date the lease was made the said McLemore was owner of and in possession of said land; that in December, 1925, or January, 1926, the said McLemore, for a valuable consideration, sold said rental note to defendant Merriweather, who is now the owner thereof; that at the time of renting said land there was a deed of trust lien thereon, given by the said T. N. McLemore to Nancy Pullam, to secure a certain indebtedness; that on the ———— day of August, 1926, this deed of trust was foreclosed and the land was purchased at the sale by defendant Nancy Pullam; that defendant Merriweather, as assignee of said note, is demanding payment thereof and the defendant Nancy Pullam, purchaser at said trustee's sale, is demanding and threatening to collect the rent; that plaintiff is willing to pay over said rental sum of $1800 but is unable to determine which of the two defendants is entitled to same. A receiver was appointed by the court to receive the 1926 rent for the land.

Defendant, Nancy Pullam, filed her interplea, setting forth substantially the same state of facts as were contained in the original bill and, in addition, stated that plaintiff and his sub-tenants agreed to pay her rent for said land for the year 1926; that defendant Charles Merriweather, as assignee of the said McLemore, is not entitled to collect and receive rent for the year 1926, because said foreclosure of said deed of trust terminated any right that Merriweather, as assignee, might have had prior to said foreclosure; that by virtue of said foreclosure and purchase of said land at the sale under said deed of trust, she became the owner of said land and entitled to collect and receive the rent for the year 1926.

Defendant Merriweather likewise filed an answer and interplea setting up that the sole consideration for said $1800 note was the agreed rental for said land; that before maturity and for a valuable consideration he purchased said note from the said McLemore; that by negotiating and selling said note and receiving the purchase price thereof from defendant, the said McLemore was paid in full for the rents due him for the year 1926, and at the time of the trustee's

sale, aforesaid, he had no lien or interest in the crops on said land; that if defendant, Nancy Pullam, be now entitled to collect the rents from plaintiff, he would be liable to pay the rents twice in violation of section 2334, Revised Statutes 1919; that neither plaintiff nor his sub-tenants agreed to pay Nancy Pullam the rent for the year 1926, but refused to do so; that defendant neither admits nor denies that the funds now in the hands of the receiver are rent monies, but in any event defendant is entitled to apply same to the discharge of the rent note. The cause was tried to the court and judgment was for defendant Merriweather. Defendant Nancy Pullam has appealed.

The evidence shows little conflict and substantiates the material allegations of the petition. The deed of trust was filed of record long before the lease was made. It appears that defendant Merriweather had actual notice of the fact that the $1800 note was for rent of said farm for the year 1926, and that he had at least constructive notice of the existence of the deed of trust which was foreclosed in August, 1926, and under which appellant Pullam claims title. The note was assigned to Merriweather in January, 1926. In December, 1925, one of the notes secured by the deed of trust fell due and in default of payment, the foreclosure resulted in August, 1926. There is no proof of the value of the use of the farm for the period after the date of the foreclosure and to the end of plaintiff's term. We therefore do not consider any question, in regard thereto, in issue. No fraud or collusion is pleaded; neither does defendant Merriweather claim title to the $1800 note as an innocent purchaser. We shall hereinafter refer to such other facts as may be necessary to an understanding of the issues.

Appellant's assignments of error are general. Her brief develops the theory that the assignment of the rent note did not constitute payment of the rent; that upon foreclosure the purchaser became entitled to all rents accruing subsequent to the sale; that the rent did not accrue until November 1, 1926, and the foreclosure sale took place in August; that the rents could not be apportioned and therefore appellant, as purchaser at the foreclosure sale, was entitled to the whole amount of the annual rent. On the other hand, respondent contends that when the landlord sold him the rent note in January, 1926, the rent became fully paid; that the landlord had no interest remaining in the rent at the time of the foreclosure and, therefore, the appellant, as purchaser at the foreclosure sale, is entitled to none of the rent, since it cannot be apportioned.

The legal principles involved are well settled. Appellant concedes and the decisions of this State upheld the general proposition that a mortgage or deed of trust is treated as a mere security for the payment of the debt and not as an outright conveyance of the title.

[Real Estate & Loan Co. v. Coal Co., 282 Mo. 75, 220 S. W. 675; Grafeman Dairy Co. v. Club, 241 S. W. 923.] The same cases hold that, "in the absence of a stipulation to the contrary, the mortgagor is owner to all the world, and is entitled to the rents and profits until the mortgagee enters into the actual possession or takes some equivalent action." [Grafeman Dairy Co. v. Club, supra, l. c. 927.] In other words, the common-law doctrine that a mortgage conveys the legal title, is not the law of this State, but such instrument, only to a limited extent, affects the rights of the mortgagor prior to default and entry under the mortgage. In R. C. L., p. 919, it is said that, "If the rule prevails that a mortgage is merely a security, it will not operate as a transfer of the reversion so as to confer upon the mortgagee any right to the rents, and the rights of the original parties are not affected by a judgment of foreclosure, the lessor retaining the right to all rents which accrue until by the terms of the decree the purchaser is entitled to possession."

It is also well settled that at common law, and in this State, the rent follows the reversion or ownership of the land and no apportionment can be made, but the monthly or annual rent, as the case may be, follows the land and belongs to the owner at the time it accrues. [Vaughn v. Locke, 27 Mo. 290; Culverhouse v. Worts, 32 Mo. App. 419; Page v. Culver, 55 Mo. App. 606; Loomis v. Shriner, 165 Mo. App. 25, 145 S. W. 865; 36 C. J. 364; L. R. A. 1915C (note), p. 231.]

Respondent concedes that the taking of a note for the rent does not constitute payment of the rent. The authorities so hold. [Freeman v. Ruth, 257 S. W. 500, 215 Mo. App. 398; Big Four Implement Co. v. Cheney, 223 S. W. 944, 204 Mo. App. 285; Plant v. Goham Mfg. Co., 174 Fed. 852.] The foregoing legal principles are conceded, we think, by the briefs of appellant and respondent.

Under the facts in this case the rent did not accrue until November, 1926, and the purchaser at the foreclosure sale occurring in August, 1926, would, under the law, be entitled to the rent evidenced by the rent note, unless the assignment of that note to a bona-fide purchaser for value prior to the foreclosure sale (as in this case) may be construed to constitute a severance or payment of the rent. As we understand the issues involved, that question is decisive of this case. It is not a question involving the rights of an innocent purchaser or holder in due course under our Negotiable Instrument Law. Respondent knew the note was given for rent and investigated the growing crop before he purchased the note. He also knew, prior to his purchase of the rent note, that default had been made in payment of one of the notes secured by the deed of trust on the land. With this knowledge, what was the affect of the assignment

of the rent note to him? At the time the rent note was assigned by the then owner, or lessor, he had a perfect right to the rents and profits and this right continued until the beneficiary in the deed of trust entered into possession or took some equivalent action. In this case no action whatever was taken until the foreclosure proceedings were commenced. Had the lessor taken cash rent for the year 1926, it seems clear the appellant would have no right to any of the rent for that year in the absence of proof of the rental value after foreclosure. The rent being paid, the tenant, or lessee, would have been entitled to all the fruits of his labor and he is fully protected in that right by our statute. [Sec. 2234, R. S. 1919.] Any other rule would compel the tenant to twice pay the rent and would have the effect of either abolishing the practice of renting for cash (where there is a mortgage on the land rented) or of nullifying the beneficent object of the statute referred to. But, as heretofore stated, the plaintiff Allen gave only his note as evidence of the rent, and of course the rent was not thereby paid. That being true he was placed in the position whereby he was compelled to either pay to respondent the amount due on the rent note or to pay appellant, as purchaser at the foreclosure sale, the amount of the rent as provided in his (the tenant's) lease. We may assume for the sake of argument, that he decided to take the latter horn of the dilemma and elected to pay appellant but refused payment of his rent note. Would he then have been liable to respondent for the total amount due on his note? This identical situation arose in the case of Johnson v. Murray, 289 S. W. 977. In that case it was held that the transfer of the rent note constituted payment of the rent for the crop year, at least until the date of foreclosure; that the tenant's right to the growing crops were not in any way affected by the foreclosure; that he was under no obligation to pay rent to the purchaser at the foreclosure sale and, therefore, he was liable on the rent note to the assignee thereof. To the same effect is the opinion by this court in the case of Hunter v. Henry, 181 S. W. 597. We believe the conclusions reached in Johnson v. Murray, are correct statements of the law and decisive of the instant case. In 16 R. C. L., p. 918, the rule is thus stated:

"Though notes have been taken by the lessor for the rents to accrue, the transfer of the reversion will nevertheless carry therewith the subsequently accruing rents and the notes representing the same. An assignment, however, of a rent note by the lessor to a bona-fide purchaser for value, before the transfer of the reversion by him, operates as a severance of the rent from the reversion, and hence, in such cases, the rent cannot pass to the transferee of the reversion."

In 41 C. J., p. 999, the learned writer says:

"The purchaser at foreclosure sale is generally entitled to the rents and profits of the property from the time his title vests until he takes possession, and thereafter to receive and recover the rents from tenants in the actual occupation of the premises. But it has been held that, where the mortgagor, before foreclosure, leases the premises and assigns the rent notes, the purchaser on foreclosure is not entitled to the rent thereafter falling due under the lease."

To the same effect is the note to Glidden v. Second Avenue Investment Company, L. R. A., 1915C, p. 230, wherein it is said that "An assignment of the rent note by the lessor to a bona-fide purchaser for value, before the transfer of the reversion by him, operates as a severance of the rent from the reversion; hence in such cases the rent cannot pass to the transferee of the reversion." We find the authorities almost unanimous in holding the assignment of a rent note by the lessor constitutes payment of the rent and a constructive severance thereof from the reversion. The Kansas City Court of Appeals in the Johnson case, supra, expressly held that the fact that the assignee of the note knew the note was given for rent and that the indebtedness secured by the deed of trust was then due, would not affect the assignee's right to recover. Hence the Johnson case cannot be distinguished from the case at bar on the theory as contended by appellant.

It is urged by appellant that the case of Farmers' Bank of Hickory v. Bradley, 288 S. W. 774, is decisive of this case. In the Bradley case our Supreme Court held that the lien of a deed of trust on land is superior to a subsequent chattel mortgage on a corn crop not actually severed from the ground at time of foreclosure; that the mortgagee in the chattel mortgage had no greater rights than his mortgagor, and that, even though the giving of the chattel mortgage constituted a constructive severance of the ownership of the crop from the ownership of the land, it would in no manner affect the rights of the purchaser at the foreclosure sale under the deed of trust. The Bradley case was first before the Kansas City Court of Appeals and was thereafter transferred to the Supreme Court because the conclusion reached was held to be in conflict with the opinion of this court in the case of Farmers' Bank v. Parker, 245 S. W. 586. The opinion of the Kansas City Court of Appeals in the Bradley case was written by Judge BLAND. The case of Johnson v. Murray, supra, holding that the assignment of a rent note, even as against the purchaser at a foreclosure sale of a prior deed of trust, amounted to a severance of the rent from the reversion, was also an opinion by Judge BLAND. No reference is made in the latter opinion to the Bradley case.

It is apparent the two cases are entirely different in principle. No question of rent arose in the Bradley case; the rights or liabilities of a tenant under our statute were not under consideration. The question was simply between different lien claimants and the one with the superior lien was held to prevail. In the Johnson case, and in the case at bar, the rights and liabilities of a tenant under the statute are involved. The question in this case is whether or not the assignment of a rent note constitutes payment of rent. It really resolves itself, in our opinion, into a controversy between the tenant and the purchaser of the reversion. When we hold the rent was paid by the assignment of the rent note, the tenant is then protected in his right to the crop by our statute. We believe the reasoning in the Johnson case is sound and supported by substantial authority.

Some point is made that the purchaser at the foreclosure sale is entitled to rent for the portion of the year 1926 after the date of foreclosure. We have held, and appellant has conceded in her brief, that the rent, under the facts in this case, could not be apportioned. Moreover, there is no evidence from which the rental value of the land after August, 1926, until the end of the crop year, can be ascertained. No such theory was advanced in the trial court and we do not believe it can be properly raised in this court. The judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Bradley, J.,* concur.

## On Motion For Rehearing.

BAILEY, J.—It is earnestly urged that the assignment of the rent note did not constitute payment of the rent; that the deed of trust was a lien on the rent and therefore, under the authority of Farmers' Bank v. Parker, 288 S. W. 774, upon foreclosure, the rent not then having accrued, it passed with the reversion to the purchaser at the foreclosure sale. The Parker case, which we have heretofore discussed, holds that until the debt is paid the maker of the deed of trust "can do nothing on his own motion to impair the security, except, under the above conceded rule, he has the right to sever growing crops from the ground, or collect rents and profits (which latter right cannot be invoked under the facts in this case), until possession taken or foreclosure under the deed of trust." But in the case at bar the maker of the deed of trust sold the rent note and thus in effect collected the rent, in so far as the tenant was concerned, because the tenant became liable to the purchaser of the rent note irrespective of the lien which the deed of trust may have placed on the rent. [Johnson v. Murray, supra.] The tenant was then in the same position he would have been had he paid cash rent. The statute intended to protect him would certainly be nullified were we

to hold the tenant liable both to the assignee of the rent note and the purchaser of the reversion. The motion for re-hearing should be overruled. It is so ordered.